## CIRCUIT COURT OF FAIRFAX COUNTY

Jack Rinker et al.

v.

City of Fairfax et al.

February 24, 1992

Case No. (Chancery) 97940

BY JUDGE J. HOWE BROWN

The controversy in this case arises from the 1986 rezoning of complainants' property by the City of Fairfax to C1 with proffers. After hearing the evidence in the trial of this case, the Court asked the parties to submit written memorandums in lieu of closing argument.[1]

The complainants seek a determination from this Court that the City imposed involuntary conditions on their property because the proffers they had submitted with their application for rezoning had been withdrawn. Because of this illegal action, they request an order declaring that the property be zoned under the new C1 ordinance without condition. Moreover, the complainants ask this Court to find that the City has denied them equal protection of the laws under the U.S. and Virginia constitutions, as well as a violation of 42 U.S.C. § 1983. For this they seek an order directing the City to grant whatever waivers and exceptions are necessary to permit the landowner to develop its property similarly to development of property located at 10513 Judicial Drive (Tydings II). Although not prayed for in their

---

[1] Also at issue is an unresolved demurrer filed by the individual defendants in this case. Plaintiff stipulated at trial that they were only seeking recovery from the defendants in their official as opposed to individual capacity, however, which would render the question raised by the demurrer moot. Without deciding the merits of the demurrer, therefore, the court grants the complainants leave to amend their pleading to reflect their stipulation.

*ad damnum* clause, the complainants seek damages in the amount of $240.20 per day accruing since May 1986. Finally, the complainants ask this Court to award attorney's fees for the § 1983 violation.

Complainants own a parcel of land located at 10509 Judicial Drive. This property was zoned C1-L (limited office use) at the time the landowners purchased the property. To the left of the subject property at 10505 Judicial Drive is another parcel of land owned by the complainants. This land was zoned C1 by court action in 1973, prior to the existence of the C1-L zoning classification. To the right of the subject property is 10511 Judicial Drive, which is zoned and developed under the C1-L zoning classification. To the right of that property, at 10513 Judicial Drive, is the Tydings II property, which is zoned C1 with proffers. The subject property is bound to the rear by property with residential zoning. Across Judicial Drive to the front of the property is the Fairfax County Judicial Center.

In 1984, the complainants determined that they wanted to have their property rezoned to accommodate general commercial use under the C1 zoning classification. Their first application was patterned on the development of the property located at 10505 Judicial Drive, but the landowners withdrew this application after it received a negative response from the City staff. In the meantime, the Tydings II property was rezoned C1 with proffers by the City. In December, 1985, the complainants then submitted a second application for C1 zoning, containing seven proffers, which they felt was patterned on the Tydings II development. After learning of a proposed revision by the City to its commercial zoning classifications, the complainants amended their application in February 1986 by adding an eighth "proffer," which purported to nullify all their proffers should the City thereafter implement any new or substantially revised zoning ordinance.

The City staff recommended against approval of the application on the grounds that the proposal was inconsistent with the City's comprehensive plan. This plan calls for a transitional "buffer zone" in that area between the residential property behind Judicial Drive and the Judicial Center; most properties on Judicial Drive are zoned under the C1-L zoning classification because of this. Moreover, the staff determined that the proposed development of the subject property was not in fact similar to the Tydings II development. For example, the floor area ratio was higher once underground parking was

eliminated, on-site circulation was poorer, the property was located closer to the congested intersection of Judicial Drive and Route 123, and the application proposed to eliminate required setbacks.

On March 10, 1986, the Planning Commission of the City of Fairfax recommended approval of the proposed rezoning with slight modifications, despite the City staff's recommendation to the contrary. The modifications suggested by the Commission included the deletion of proffers number one and eight. The Commission felt that these modifications would make the rezoning more compatible with the setting of the property. On March 11, 1986, the City Council revised the general commercial zoning classifications of the city, including the C1 ordinance.

The complainants took no further action as to their proffers after the meeting of the Planning Commission on March 10 and the City Council's action in revising the zoning classifications a day later. At the City Council hearing on the proposed rezoning of the subject property on May 27, 1986, the complainants requested the new C1 classification without proffers. The City Council instead followed the Planning Commission's recommendation by changing the zoning of the property to conform to the new C1 ordinance with six conditions which were drawn from the original seven proffers submitted by the complainants.

Regardless of the legal character and effect of proffer number eight, the Court finds that its implication had to have been clear to the City. Even though the complainants did not follow proper procedures in withdrawing their proffers by amending their application under the City Code, the City was aware from the terms of proffer number eight that the landowner would no longer be voluntarily submitting proffers if the City revised its commercial zoning ordinances. Additionally, since the City was informed that the proffer was added specifically because of the proposed changes to the zoning ordinance, the City should have been aware that the changes made to the commercial zoning ordinances was a comprehensive implementation of a substantially revised zoning ordinance as contemplated by the complainants. Under those facts, therefore, the Court rules that the City did in fact impose illegal conditions on the property as part of the rezoning.

Despite this finding, the Court cannot grant the complainants' request to declare the current zoning of the property to be the new C1

without any conditions. Although the City Code does contain a severability provision, its presence is only an aid in determining legislative intent and not an inexorable command. *Bd. Sup. James City County v. Rowe*, 216 Va. 128, 147 (1975). The focus of the inquiry in a case such as this is on the intent of the lawmakers; the presumption of severability which comes from the inclusion of a severability provision in the Code can be overcome by considerations which establish the clear probability that the legislature would not have been satisfied with what remains after the elimination of the invalid parts. *See id.*

The complainants contend that the City intends to deem the property along Judicial Drive as appropriate for C1 classification, as would be the effect should the conditions imposed be eliminated from the ordinance enacted by the City Council on May 27, 1986. The evidence shows, however, that the only property which is zoned C1 without proffers on Judicial Drive is 10505, and this property was so zoned by *court* action prior to the existence of the C1-L zoning classification. Only one other property on Judicial Drive, Tydings II, is zoned C1, and that zoning includes reasonable conditions voluntarily proffered by the landowner. It cannot be said based on this evidence that the intent of the City is to rezone property on Judicial Drive C1 without any restrictions on that classification, and this finding overcomes the presumption of severability in this case. For this reason, the effect of the imposition of illegal conditions as part of the rezoning of the property on May 27, 1986, is to render the entire ordinance invalid. The zoning thus would revert back to the original C1-L zoning classification it carried prior to the City's action.

The Court also finds that the City did not deny complainants equal protection of the laws under the Virginia and U.S. Constitutions or violate § 1983 of the U.S. Code. A section 1983 claim involving review of local zoning decisions is governed by similar principles as are applied in equal protection cases. *Cowart v. City of Ocala, Fla.*, 478 F. Supp. 774, 781 (M.D. Fla. 1979); *see also Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1577 (11th Cir. 1989). The inquiry in such cases is whether the provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. *See Cowart*, 478 F. Supp. at 780; *see also Greenbriar*, 881 F.2d at 1577. In equal protection cases as well, the inquiry is whether the classification drawn by the statute is

rationally related to a legitimate state interest; otherwise, the action of the legislature is presumed to be valid and will be sustained. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *see also City of Manassas v. Rossen*, 224 Va. 12, 21 (1982); *County of Lancaster v. Cowardin*, 239 Va. 422, 427 (1990); *County Board of Arlington v. Bractic*, 237 Va. 221, 229 (1989).

The complainants' principle argument in this regard is that it was treated differently from the Tydings II landowner, because the Tydings II property has been allowed to develop to a greater extent than the subject property and without illegal conditions imposed upon it. The City has rebutted this argument with evidence that the proposed development of the subject property was not in fact similar to the Tydings II property, and the Court finds this to be the case. Additionally, the City has maintained that the reason for the transitional zoning in effect in the area where the subject property is located is to provide a buffering area between the residential property to the rear of the subject property and the county complex across the street from it. The court finds that the City has a legitimate state interest in regulating the development of the property in that area. For this reason, the Court will not direct the City to grant such waivers, variances and exceptions as are necessary to allow the complainants to develop their property as they wished; and attorney's fees are correspondingly inappropriate in this case.

Moreover, even if the above had not been established, the court finds that the change in the C1 zoning ordinance was a change in circumstances. The complainants in this case are simply not entitled to develop their property under a zoning classification which did not exist at the time their property was rezoned. The court has no authority under these circumstances to order the city to allow the complainants to develop their property to the same extent as Tydings II did under a zoning classification no longer in existence.

Even if the complainants' equal protection and § 1983 arguments had prevailed, the court would not order the damages sought in this case. Overlooking the fact that the complainants never requested an award of damages in their Bill of Complaint for Declaratory Judgment and Injunctive Relief, the damages have not been established to the Court's satisfaction. In order to be compensated for a temporary taking of property, the landowner must show that it has been deprived of *all* economically viable uses of its property. *See Virginia*

*Beach v. Virginia Land Invest. Ass'n*, 229 Va. 412, 416–17 (1990); *see also First English Evan. Luth. Ch. v. Los Angeles City*, 482 U.S. 304, 318 (1987). The court finds that the landowner in this case has not been deprived of all use of his property. He has only shown that he could not develop the property as he wanted, not that he could not develop the property at all. Additionally, the City has submitted sufficient evidence to show that the landowner could, in fact, have reasonably developed the property under the both the C1-L zoning category and the zoning ordinance adopted on May 27, 1986.

The landowners' argument that they were denied the total use of their property because of the imposition of the illegal conditions as part of the zoning ordinance affecting that property, such as the road dedication and construction requirements, also does not permit an award of damages in this case. A local governing body does not have the power to enact a zoning ordinance that requires individual landowners, as a condition to the right to develop their parcels, to dedicate a portion of their fee for the purpose of providing a road, the need for which is substantially generated by public traffic demands rather than the proposed development. *Rowe*, 216 Va. at 138–39. The Court finds, however, from the evidence submitted, that the proposed development on the property would have increased the traffic on the road such that there was a reasonable basis for the City to conclude that road dedication may have been required under the site-plan ordinance.

Even if the dedication and construction requirement could not have been required by the City, it and the other conditions did not deprive the landowner of the total use of his property. The property still could have been developed. Since the landowners did not develop their property, the conditions were not enforced, and therefore there was no actual damage from their imposition. For these reasons, the court finds that the landowners have not established sufficient proof or evidence of compensable damage.

Judgment is entered for the complainants on the issue of the imposition of illegal proffers, the effect of which is to cause the property to revert back to its former zoning classification. No damages, attorney's fees or other injunctive relief is awarded.